OKIE (UNITED STATES v.). See Case No. 15,916.

## Case No. 10,477.

### The OLBERS.

[3 Ben. 148.] [1]

District Court, S. D. New York. Feb., 1869.

BILL OF LADING—LEAKAGE OF CASK—BURDEN OF PROOF—PLEADING.

1. Where an answer contained allegations which were inconsistent, but it had not been excepted to, and the case went to trial, *held*, that the court must take that allegation, which operated most strongly against the claimants, to be the one really made.

2. The averment, in a bill of lading, that a cask was "in good order and well conditioned," extends only to its apparent external condition, excluding any implication as to its intrinsic soundness and sufficiency.

[Cited in Vaughan v. Six Hundred and Thirty Casks of Sherry Wine, Case No. 16,900; The T. A. Goddard, 12 Fed. 177.]

3. Where a cask of wine was delivered empty, the wine having leaked out through a hole, which on the evidence, the court found to have been a latent defect in the cask, the bill of lading containing the clause "not accountable for leakage," *held*, that a loss by such defect afforded an excuse for the non-performance of the bill of lading, and the burden was thrown upon the consignee to show that the loss might still have been avoided by the exercise of reasonable skill, diligence, and attention on the part of the carrier.

4. As such evidence was not given, the vessel was not liable for the loss.

This was a libel to recover the sum of $489, as the value of the wine contained in a cask, shipped on the bark Olbers, at Rotterdam, on the 3d of November, 1865, by C. Hemmann & Co., consigned to the libellants, Jacob Wolf and Alexander Wolf, at New York. The shipment was made under a bill of lading signed by the master of the vessel. The bill of lading covered twenty-six casks in all. It contained a statement that the property was shipped "in good order and well conditioned," and contracted for the delivery of it "in the like good order and well conditioned," "all and every dangers and accidents of the seas and navigation, of whatsoever nature or kind, excepted." Upon the face of the bill of lading, (which was a printed blank, in English, filled in with written words,) the following words were separately impressed by a stamp: "Not accountable for leakage, breakage, rust, or corruption." The libel alleged, that the master failed to deliver to the libellants the wine in one of the casks, although no danger, or accident of the seas or navigation, prevented, and that, through the negligence of those in charge of the vessel, while the wine was in such cask, and such cask was in the keeping of the vessel and her master, a hole was pierced in the head of the cask, near the chime thereof, with an instrument unknown to the libellants, and all of the wine was taken out of the cask, and no part of it was ever delivered to the libellants. The answer admitted, that the cask was delivered to the

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

master of the vessel in apparent good order, as to its external condition, and set up that, by the bill of lading. the vessel was not to be accountable for any loss arising from leakage, breakage. rust or corruption; that the cask was delivered to the libellants, at New York, to all external appearance, in the same condition in which it was received by the vessel; that any loss or abstraction of its contents which occurred, happened before it came on board of the vessel or after its delivery therefrom; that, during the voyage, the vessel met with great storms; that, if the contents of the cask were lost, the loss was caused by the perils of the sea, and by reason of the cask being defective and imperfect and not sufficiently strong to withstand the voyage; and that, by usage and custom in regard to such merchandise, the vessel was not accountable for leakage under such circumstances.

C. Goepp, for libellants.
J. K. Hill, for claimants.

BLATCHFORD, District Judge. It is impossible not to remark the wholly and recklessly inconsistent statements in this answer, and which, moreover. are sworn to. There is, first, a statement that the loss or abstraction of the contents of the cask, if any there were, did not take place on board of the vessel; and then a statement that the loss, if any, was caused by the perils of the sea, and the inability of the cask to withstand the voyage. and consequently during the voyage and while the cask was on board of the vessel. It is unnecessary to say that both of these averments cannot be true. The answer not having been excepted to for these inconsistencies, this court must take that allegation which operates most strongly against the claimants, to be the one really made, namely, the allegation that the loss took place while the cask was on board of the vessel, and from an excusable cause.

The proof, in this respect, corresponds with the allegations of both the libel and the answer, and shows that the leakage of the wine from the cask took place while the cask and its contents were on board of the vessel. Such loss being shown, the burden falls upon the claimants to show that it was occasioned by one of the perils or causes from which they were exempted by the bill of lading, or by the general rules of law. Clark v. Barnwell, 12 How. [53 U. S.] 272, 280. There is no satisfactory evidence that the loss of the wine was occasioned by any danger or accident of the seas or of navigation.

The only other exception in the bill of lading, on which the claimants can rely to shield the vessel from responsibility, is the provision, that the vessel shall not be accountable for leakage. In this connection. the answer avers that the cask was defective and imperfect. The averment in the bill of lading, that the property was "in good order and well conditioned," so far as it is applicable to the cask, extends only to the apparent external condition of the cask, excluding any implication as to its intrinsic soundness and sufficiency. Clark v. Barnwell, 12 How. [53 U. S.] 272, 283; The Columbo [Case No. 3,040]. The claimants are at liberty, therefore, notwithstanding the bill of lading, to show the defectiveness of the cask. It is shown, by the evidence. that the cask was in apparent good order when it was put on board and did not then leak. When the cask was brought to light, on breaking out bulk at New York, and before it was taken out of the vessel, it was found to be substantially empty, and marks were found of the wine which had leaked out. The leakage had evidently taken place through a hole which was found in one of the two heads of the cask. The hole was on the line of the joint between two of the pieces of wood which formed the head. There is much conflicting testimony as to what was the size and character of this hole, when it was first seen after the arrival of the vessel at New York. Some of the witnesses for the claimants describe it as a round hole, and as being no larger than the head of a pin, or the point of a pencil, while witnesses for the libellants describe it as a hole whose cross-section was a square, or a parallelogram, and such a hole as would be made by a nail. The theory, on the part of the claimants, is, that the hole was made by the working out of a plug, which had been inserted into what was originally a hole made by a worm in the wood of the cask. The testimony of the master and that of the first mate of the vessel is, that the wine which leaked out escaped through that hole. In view of this fact, and of the character of the hole, in any view that can be taken, I do not think that the exemption of the vessel from responsibility for leakage, under the provision to that effect in the bill of lading, necessarily extends to leakage through a hole of this description; but that, when such a hole is shown to exist, it is incumbent on the vessel to show that the hole was caused by a defect in the cask. This the claimants have undertaken to do. and I think the evidence satisfactorily shows, that a plug had been put into a hole, and that a longitudinal piece of that plug had become broken away from the rest of the plug and worked out. the piece so broken away being coincident, to some extent. in its outer surface, with the inner surface of the original hole. This made an orifice, through which the wine escaped. This plugged hole was a latent defect in the cask. As the evidence leads to the inference that the loss of the wine was caused by this defect in the cask, and that such defect existed before the cask was put on board, and as, according to the general rules of law, a loss by such defect affords an excuse for the non-performance of the contract. the burden is thrown on the libellants to show that the leakage and loss might still have been avoided by the exercise of reasonable skill. diligence and attention on the part of the carrier. It

was, therefore, open to the libellants to show improper stowage of the cask, sufficient to cause the development of the defect, or to show that the ordinary working of the ship and cargo, as an incident of navigation, would not have caused the breaking out of the plug. Clark v. Barnwell, 12 How. [53 U. S.] 280, 283, 284. This they have not shown, and the libel must, therefore, be dismissed, with costs.